Jimmy Lance RANDON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–04–00411–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 16, 2005.

Rehearing Overruled July 19, 2005.

---

Lucinda Kay Marshall, Houston, TX, for Appellant.

William J. Delmore, III, Chief Prosecutor, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

A jury found appellant, Jimmy Lance Randon, guilty of the felony offense of aggravated assault,[1] and the trial court assessed his punishment at 15 years' confinement. In his sole issue, appellant contends that his trial counsel was ineffective. We affirm.

## Background

The female complainant and appellant, her next door neighbor, had a history of problems. One morning, the complainant arrived home around nine or ten and was greeted by a barrage of cursing from appellant. Shortly after going into her house, the complainant noticed that appellant's clothes were scattered throughout her backyard. The complainant went to appellant's house to ask him to remove his clothes from her backyard. Appellant answered the door holding a knife. His response to the complainant's request was, "F* * * you, b* * * *. I'll kill you."

Noticing that Houston Police Department (HPD) officers were investigating an unrelated incident down the street, the complainant went to the officers and reported the encounter. The complainant told the officers that appellant had "broken into her residence, placed some items inside her garage, and threatened her with a knife." The officers went to appellant's house and attempted to speak with him. Appellant did not respond to the officers' repeated knocks. Based on the facts available to them, the officers concluded that appellant was armed and had likely barricaded himself inside his house. Following HPD protocol, the officers requested a

---

1. A person commits aggravated assault if the person commits assault as defined in 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse or (2) uses or exhibits a deadly weapon during the commission of the assault. TEX. PEN. CODE ANN. § 22.02 (Vernon 2003). Section 22.01 states that a person commits an offense if the person (1) intentionally, knowingly, or recklessly causes bodily injury to another including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Id. § 22.01 (Vernon 2003).

SWAT team. The SWAT team tried unsuccessfully to communicate with appellant via loudspeakers. Appellant responded by turning up the volume on his stereo. HPD then cut the power supply to appellant's house, and appellant voluntarily left the house. After appellant was arrested, his father allowed an officer to go into the house. The officer found a knife in a bedroom. The complainant later identified the knife as the weapon appellant had used when he answered the door.

In pre-trial proceedings, the trial court appointed an attorney to represent appellant. The trial court granted defense motions, which were unopposed by the State, ordering Harris County Forensic Psychiatric Services to examine appellant to determine his competency and his sanity at the time of the offense. In February 2003, Dr. R. Laval found that appellant "manifested active symptoms of a severe mental illness" and, in his opinion, was incompetent to stand trial. Dr. Laval stated that appellant's thinking was disorganized and his speech was loose and tangential. The doctor opined that appellant's cognitive functioning was compromised. However, due to appellant's "deteriorated mental condition" during the examination, Dr. Laval was unable to offer an opinion regarding appellant's mental state at or near the time of the offense and, therefore, recommended that appellant be re-examined after his mental state improved.

The trial court conducted a competency hearing in March 2003. At the hearing, a jury found appellant mentally incompetent to stand trial. The jury also found that there was a substantial probability that appellant would attain competency within the foreseeable future. The trial court adopted these findings and ordered appellant committed to North Texas State Hospital (NTSH), Vernon Campus, for up to 18 months because appellant's "conduct did involve an act, attempt or threat of serious bodily injury to another person."

In July 2003, Dr. R. Brimmer, a psychiatrist at NTSH, sent the trial court a written request to civilly commit appellant pursuant to the relevant portions of article 46.02 of the Code of Criminal Procedure. See Act of May 26, 1999, 76th Leg., R.S., ch. 561, § 7, 1999 Tex. Gen. Laws 3098, 3099 (repealed 2003). In his evaluation, Dr. Brimmer described appellant's behavior as "considerably influenced by hallucinations and delusions." Dr. Brimmer noted that appellant had been a patient at Rusk State Hospital in the past and that several mental health evaluations were conducted at that time.[2] Dr. Brimmer also noted that appellant's records included a copy of a Letter of Guardianship from a Harris County court dated May 17, 2002. Dr. Brimmer stated that he believed that there was no substantial probability that appellant would become competent in the foreseeable future because appellant had a "chronic disorder [and was] responding slowly to appropriate treatment."

The trial court appointed new counsel in July 2003. On the same day he was appointed, appellant's counsel filed two more requests for psychiatric examinations to determine appellant's sanity and competency. Neither of these requests was opposed by the State. The trial court granted both motions.

The trial court appointed Dr. N. Decker to provide an independent mental examination of appellant. Dr. Decker reviewed appellant's record and conducted an interview with him. The interview was brief because appellant became angry and terminated the interaction after about a half an hour. Nevertheless, Dr. Decker re-

2. Appellant's records from Rusk State Hospital are not a part of the appellate record.

ported in his evaluation that, "because of the pervasive persecutory beliefs [appellant] espoused, he clearly demonstrated a paranoid delusional system, involving the police and the medical/psychiatric establishment." The doctor noted that appellant was "grossly inappropriate about the role of his attorney and, clearly, had no ability to work with him in court, for his defense." Based on appellant's records and his own observations, Dr. Decker stated he would diagnose appellant either as a paranoid schizophrenic or as suffering from schizoaffective disorder. In Dr. Decker's opinion, appellant was "clearly NOT competent to stand trial and to, knowingly, act appropriately in his defense." (Emphasis in original.) Dr. Decker agreed with Dr. Brimmer's recommendation to extend appellant's commitment for further treatment.

Dr. A. Abdulla, examining appellant on behalf of Harris County, filed a Physician's Certificate of Medical Examination. In his evaluation, Dr. Abdulla opined that appellant was likely to cause serious harm to himself and others and that, if not treated, appellant would continue to experience deterioration of his ability to function independently. During Dr. Abdulla's interview with appellant, appellant stated that he did not need any medication.

The trial court conducted a second civil commitment hearing in September 2003, in which Dr. Decker's and Dr. Abdulla's evaluations and a Letter of Guardianship from a Harris County Probate Court were admitted into evidence.[3] The jury found appellant incompetent to stand trial. The jury also found that there was no substantial probability that appellant would attain competency in the foreseeable future. The trial court ordered appellant transferred

back to NTSH, Vernon Campus for up to 12 months.

In January 2004, Dr. M. Ferguson, a Unit Psychiatrist at NTSH, Vernon Campus, notified the trial court that, in her opinion, appellant was competent to stand trial. Dr. Ferguson included a written evaluation conducted by Dr. S. Shipley, a psychologist. Before writing her evaluation, Dr. Shipley interviewed appellant for about one hour and reviewed appellant's medical records and ward records. Dr. Shipley noted that appellant had repeatedly refused to take his medication, so the hospital gave him intramuscular injections. She further noted that after appellant's medications were changed, appellant made significant improvements. Dr. Shipley stated that, "[a]lthough medication compliant, [appellant] continues to voice some complaints about his need for medication and has required repeated reassurance of the necessity of the medication for the improvement of his psychiatric symptoms." Dr. Shipley noted that appellant is at a "very high risk to suspend taking his medication while in jail." Dr. Shipley opined that if appellant were to stop taking his medications completely his competency would be at issue. Dr. Shipley stated that, "[i]t is recommended that [appellant] return to court and that his trial be initiated soon in order to minimize the adverse impact that time in jail may have on his overall mental state and his treatment compliance." Dr. Shipley concluded by offering her opinion that appellant was competent to stand trial.

The trial court appointed the attorney about whom appellant now complains as appellant's trial counsel. During pre-trial

3. According to the Letter of Guardianship, appellant was deemed incapacitated on December 21, 1993. The letter appointed Harris County Guardianship Program as appellant's guardian.

proceedings, the following exchange took place between trial counsel and the court:

THE COURT: All right. Before we take up this matter, prior to jury selection, it is—according to the file you submitted to a competency and sanity evaluation. Is that correct, Mr. Godinich?

DEFENSE COUNSEL: Yes, it is, Your Honor.

THE COURT: And he was found to be sane and competent?

DEFENSE COUNSEL: That is my understanding, Your Honor.

THE COURT: All right. I will make that finding at this time.

Appellant and the State agreed to a motion in limine that required counsel to approach the bench before going into any mental health issues, any issues of competency, or any issue of sanity regarding appellant. Trial counsel also informed the court that appellant wished to testify. After the trial court swore appellant in, trial counsel asked appellant if he understood that testifying would subject him to cross-examination by the State and would allow his criminal history to be presented to the jury. Appellant said he understood.

During trial, appellant testified that the complainant was lying. Appellant stated that when the complainant came to his house, he was holding a knife because he was eating lunch. Appellant testified that he had fallen asleep after lunch and did not hear the police officers knocking on his door. In closing arguments, trial counsel highlighted the fact that none of the police officers saw the assault, and the State was not pursuing a burglary charge against appellant. Trial counsel implied that the complainant had fabricated the story and that appellant had subjected himself to cross-examination on his prior convictions in the hope of gaining credibility with the jury.

The jury found appellant guilty of aggravated assault. The trial court assessed punishment at 15 years' confinement. Appellant did not file a motion for new trial. This appeal followed.

## Discussion

Appellant makes three arguments to challenge the effectiveness of his trial counsel: (1) counsel failed to research prior proceedings in appellant's case; (2) he failed to investigate an insanity defense; and (3) he ignored appellant's rights to a jury hearing and to an independent examination for competency. Appellant contends his counsel's ineffectiveness prejudiced his defense.

In reviewing an ineffective assistance of counsel claim, we evaluate the effectiveness of counsel under the two-pronged test enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 988 S.W.2d 770, 774 (Tex.Crim.App. 1999). First, the defendant must show that his counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064. To prove this deficiency in representation, the defendant must demonstrate that his counsel's performance deviated from prevailing professional norms. *Id.* 466 U.S. at 688, 104 S.Ct. at 2065; *McFarland v. State,* 845 S.W.2d 824, 842–43 (Tex. Crim.App.1992). Second, the defendant must show prejudice. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. This requires the defendant to show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* 466 U.S. at 694, 104 S.Ct. at 2068. The failure to satisfy one prong of the *Strickland* test negates a court's need

to consider the other. *See id.* 466 U.S. at 697, 104 S.Ct. at 2069. An appellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

We must look to the "totality of the representation and the particular circumstances of each case" in evaluating the effectiveness of counsel. *Id.* In so doing, we recognize the strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Thompson,* 9 S.W.3d at 813. As the Supreme Court observed:

It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. To defeat the presumption of reasonable professional assistance, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996).

We cannot speculate beyond the record provided; rather, a reviewing court must presume that the actions taken were part of a strategic plan for representing the client. *See Young v. State,* 991 S.W.2d 835, 837–38 (Tex.Crim.App.1999). The appellant must overcome the presumption that his trial counsel's strategy was sound and affirmatively demonstrate the alleged ineffective assistance of counsel. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex. Crim.App.2003); *Thompson,* 9 S.W.3d at 814.

In his first argument, appellant contends that his trial counsel did not research the prior proceedings in the case and, therefore, did not discover that a determination of appellant's sanity was never completed. Appellant was twice deemed incompetent in prior proceedings. He contends here on appeal, however, that no mental health professional has determined whether he was sane at the time of the offense, despite two orders to do so. Appellant asserts that "it takes no great leap of imagination to deduce that the delusions appellant exhibited during his competency examinations may well have influenced his actions on the date of the offense." Thus, in his second argument, appellant contends that his trial counsel was ineffective for failing to investigate and present an insanity defense.

In his third argument, appellant contends that he was entitled to a hearing on the issue of his incompetence pursuant to former article 46.02 section 8(e) of the Texas Code of Criminal Procedure. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 561, § 7, 1999 Tex. Gen. Laws 3098, 3099 (repealed 2003). Appellant also contends that he was entitled to the appointment of experts or other disinterested witnesses under section 3 of article 46.02. *See id.* Appellant's brief further argues that "there is no indication in the record that [he] waived his right to a jury hearing, or that anyone even considered that entitlement." Appellant contends that his trial counsel was ineffective for depriving him of these rights because counsel informed the trial court that he understood appellant was competent and sane.[4]

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular in-

---

4. Article 46.02 section 8(e) states that:

The court in which the criminal charges are pending *may* hold a hearing to determine

vestigations unnecessary." *Wiggins v. Smith,* 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). Counsel's strategic choices made after a less than complete investigation of the law and facts relevant to plausible options are considered reasonable, on a claim of ineffective assistance, precisely to the extent that reasonable professional judgment supports limitations on the investigation. *Wiggins,* 539 U.S. at 521–22, 123 S.Ct. at 2535 (quoting *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066).

 Here, appellant did not file a motion for new trial. The Texas Court of Criminal Appeals has held, however, that a motion for new trial claiming ineffective assistance of counsel is not always required to preserve the claim. *See Robinson v. State,* 16 S.W.3d 808, 809 (Tex.Crim. App.2000). A timely filed appeal is a proper procedure for seeking relief regarding ineffective assistance of counsel. *Id.* at 810. A hearing on a motion for new trial is required only when the motion raises matters extrinsic to the record. *Rivera v. State,* 123 S.W.3d 21, 29 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). When an appellant's allegations of ineffective assistance of counsel are firmly founded and affirmatively demonstrated in the record, no evidentiary hearing is required. *Id.; see McFarland,* 928 S.W.2d at 500. Therefore, we address whether the record affirmatively demonstrates ineffective assistance of counsel. *See Rivera,* 123 S.W.3d at 29.

The record in this case is nearly bare as to counsel's trial strategy and as to the depth of counsel's investigation. The record does not contain any motions from trial counsel requesting a third competency evaluation. The record lacks a report from a physician evaluating appellant's sanity at the time of the offense. Indeed, the only opinion made in response to the two court orders to determine appellant's sanity was Dr. Laval's statement that he could not offer an opinion on appellant's sanity because of appellant's "deteriorated mental condition." The record is silent as to any further inquiry into appellant's competency after Dr. Ferguson's report. Trial counsel must have been at least somewhat aware of appellant's mental health history and must have done at least some research because counsel called an expert from the Texas Department of Mental Health and Mental Retardation (MHMR) to testify during the punishment phase of the trial.

Given the record before us, we are unable to evaluate the strategy of appellant's trial counsel to determine whether it was reasonable or not. Therefore, we cannot determine on the basis of this record whether appellant's trial counsel provided effective assistance of counsel. The Court of Criminal Appeals has observed that the record on direct appeal in ineffective assistance of counsel cases will rarely provide the reviewing court an opportunity to conduct a fair evaluation of the merits. *Thompson,* 9 S.W.3d at 813. "In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Id.* at 813–14. As a result, the Court of Criminal Appeals has held that, "when direct appeal has not provided an adequate record to evaluate a claim which might be substantiated through additional evidence gathered in a habeas corpus proceeding,

---

the competency of the defendant to stand trial. The hearing shall be before a jury unless waived by agreement of the parties.... The court may appoint disinterested experts to examine the defendant in accordance with the provisions of section 3 of the article. If the defendant is found to be competent to stand trial, the proceedings on the criminal charges may continue.
Act of May 26, 1999, 76th Leg., R.S., ch. 561, § 7, 1999 Tex. Gen. Laws 3098, 3099 (repealed 2003) (emphasis added).

we will not apply the general doctrine that forbids raising a claim on habeas corpus after it was rejected on appeal." *Jackson v. State*, 973 S.W.2d 954, 957 (Tex.Crim. App.1998). This is a case in which direct appeal has not provided an adequate record to determine counsel's effectiveness.

Without a record of what additional mental health information counsel based his trial strategy on, we cannot find him ineffective. To do so would call for speculation. *See Young*, 991 S.W.2d at 837–38. When the record is silent regarding counsel's reasons for his conduct, we will defer to counsel's decisions if there is at least the possibility that the conduct could have been legitimate trial strategy. *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex.Crim.App. 2002).

We overrule appellant's sole issue.

### Conclusion

We affirm the judgment of the trial court.