Opinion issued
April 28, 2011

 



In
The

Court of
Appeals

For
The

First District of Texas

———————————

NOS. 01-09-00886-CR 

          01-09-00887-CR

———————————

 

Ricky Lee Stroble, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On Appeal from the 506th
District Court

Waller County, Texas



Trial
Court Case Nos. 12,326, 12,777

 



 

MEMORANDUM OPINION

          Ricky Lee Stroble pleaded guilty to
the offenses of aggravated sexual assault of a child younger than 14 years of
age[1] and indecency with a child.[2]  After the preparation of a pre-sentencing
investigation report, the trial court held a hearing on punishment and then
sentenced Stroble to confinement for 99 years for the aggravated sexual assault
charge and 20 years for the indecency with a child charge.  In his sole issue, Stroble contends that his
trial counsel rendered ineffective assistance during the punishment phase of
his trial.  We conclude that trial
counsel did not render ineffective assistance. 
We affirm.

Background

          Stroble
lived on the same property that his ex-wife Melissa, her fiancé Scott, Scott’s
13- and 15-year-old daughters, and Melissa’s nine-year-old daughter, Jane Doe
lived on, but in a separate residence. 
Melissa discovered a videotape in Stroble’s trailer that depicted
Stroble engaged in sexual contact with a number of females.  The videotape also showed Scott’s 13-year-old
daughter taking a shower in the bathroom of Stroble’s trailer.  The recording appeared to be made through
holes in the wall of the shower stall. 
Scott provided the videotape to the Waller County Sheriff’s Office.

          Scott’s 15-year-old daughter told the
Sheriff’s Office investigator that they had discovered a camera hidden in
Stroble’s bathroom connected to a television in the living room.  Melissa told the investigator that Stroble kept
child pornography on his computer and other storage devices.  After officers obtained a search warrant,
they seized computers, computer disks, storage media, cameras, videotapes, and
disks from Stroble’s trailer.  

          After his arrest, Stroble admitted that
images of child pornography were located on some of the storage media.  Stroble subsequently pleaded guilty to
aggravated sexual assault of child younger than 14 years of age and indecency
with a child.

          During the punishment phase, Waller
County Sheriff’s Office Deputy Brian Cantrell summarized his
investigation.  He specifically testified
that Stroble admitted that he had photographs of “children under the age of 18”
on his computer, but claimed that he had tried to keep his actions within the
law.  Cantrell identified Stroble in some
of the photographs.

          Lannes Hillboldt, an officer with the Attorney
General’s Office, testified that he examined the computers and other storage
devices for the State.  Through Hillboldt,
the State introduced 71 photographs and drawings taken from the computers and
other storage devices seized from Stroble’s trailer.  Some drawings depicted sexual acts involving
children.  Some photographs depicted child
pornography and others showed Stroble nude.  Some of the photographs are of Melissa’s
nine-year-old daughter, Jane Doe, including images of her genitals.  Other images show Stroble engaging in sexual
contact with young females, including Jane Doe.

          An inmate in the Waller County jail testified
that Stroble said he had paid a girl $50 to allow him to photograph her in the
shower.  Scott’s 15-year-old daughter
testified that on one occasion Stroble paid her $50 to take off her top for a
video recording of her.  When she saw
Stroble watching the recording, he offered her $150 to masturbate him.

          Lisa Bourgoyne, who worked at the
Children’s Assessment Center of Harris County, testified to the results of her
interview with Jane Doe.  Bourgoyne
testified that Jane Doe described numerous instances of Stroble photographing
her nude.  She also described several
instances where Stroble sexually assaulted her. 
She remembered the photographs being taken and described those incidents
in a straightforward manner.  In
contrast, she described the sexual assaults as occurring when she was sleeping
or dreaming.  Bourgoyne explained that
that type of dissociation was common for abuse victims and consistent with
post-traumatic stress.  On
cross-examination, Bourgoyne conceded that she referred to Stroble’s sexual
activities as “sexual addictions” in her report.  Stroble’s counsel also attempted to suggest
that treatment programs were available for sexual addictions, but Bourgoyne
testified that she did not know if a successful treatment program was available
for sex offenders.

          The defense called Stroble, who
described a number of events in his life to demonstrate his difficult
childhood.  After his mother died when he
was three, he was adopted by relatives. 
While in their care, he was sexually abused by a babysitter.  After only two or three years of public school,
he was placed at a boys’ ranch in San Marcos.  He again experienced sexual abuse at the boys’
ranch.  He testified that by this point
he had been conditioned to view such sexual conduct as normal, and therefore he
did not report the abuse.  By age 14 he
had left the ranch and was working.

          At age 18, Stroble was charged with
indecency with a child.  Stroble
testified he only “made out” with a girl at a swimming pool.  Stroble was convicted and placed on probation
for ten years.  He testified that his
probation did not include any courses or counseling.  His probation was revoked when he was again
charged with indecency with a child. 
Stroble was again convicted and then sentenced to six years in
prison.  

          After his release from prison, Stroble
was introduced to his ex-wife Melissa shortly before she gave birth to Jane Doe.
 Stroble testified that he was first
introduced to pornography when Melissa showed him photos of her at age 15 and
her friend showed him images of young girls. 
Stroble and Melissa began taking nude photos of each other and Melissa’s
friends.

          Stroble admitted to the offenses
alleged against Jane Doe and to other occasions when he sexually assaulted her,
including oral and anal sex and sexual intercourse.  Stroble also admitted to having traded child
pornography online but stated he had not sent any pictures of Jane Doe.   Stroble
stated that he had a sex addiction and wanted medication or other treatment to
control the addiction.

          In pronouncing sentence, the trial court
stated it did not know if Stroble’s claimed sexual addiction was treatable.  The trial court assessed 99 years confinement
for the sexual assault of a child and 20 years for the indecency with a child. 

Standard of Review

          A
two-pronged test determines issues of ineffective assistance of trial
counsel.  Strickland v. Washington, 466 U.S. 668, 687–94, 104 S. Ct. 2052,
2064–68 (1984).  To prevail on a claim of
ineffective assistance of counsel, an appellant must show that (1) counsel’s
performance fell below an objective standard of reasonableness and (2) but for
counsel’s unprofessional error, there is a reasonable probability that the
result of the proceeding would have been different.  Id.;
Mitchell v. State, 68 S.W.3d 640, 642
(Tex. Crim. App. 2002).  A reasonable
probability is a “probability sufficient to undermine confidence in the
outcome.”  See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Mitchell, 68 S.W.3d at 642.   A failure to make a showing under either
prong defeats a claim for ineffective assistance.  Rylander
v. State, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

          Allegations
of ineffectiveness must be firmly founded in the record, which must demonstrate
affirmatively the alleged ineffectiveness. 
Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999).  An
appellant must prove ineffective assistance by a preponderance of the evidence,
overcoming the strong presumption that counsel’s conduct falls within the wide
range of reasonable professional assistance or might reasonably be considered
sound trial strategy.  Robertson v. State, 187 S.W.3d 475, 482–83
(Tex. Crim. App. 2006).  The record on
direct appeal in ineffective assistance of counsel cases rarely provides the
reviewing court an opportunity to conduct a fair evaluation of the merits.  Randon
v. State, 178 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2005, no pet.).
 We cannot speculate to find trial
counsel ineffective when the record is silent on counsel’s reasoning or
strategy.  See Wood v. State, 260
S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  

          In
rare cases, the record can be sufficient to prove that counsel’s performance
was deficient, despite the absence of affirmative evidence of counsel’s
reasoning or strategy.  See Robinson v. State, 16 S.W.3d 808,
813 n.7 (Tex. Crim. App. 2000).  These
rare cases are limited to occasions when no reasonable attorney could have made
such a decision.  Weaver v. State, 265 S.W.3d 523, 538 (Tex. App.—Houston [1st Dist.]
2008, pet. ref’d).  In reviewing counsel’s
performance, we look to the totality of the representation to determine the
effectiveness of counsel, indulging a strong presumption that counsel’s
performance falls within the wide range of reasonable professional assistance
or trial strategy.  Robertson, 187 S.W.3d at 482–83. 
Isolated instances of a failure to object to inadmissible argument or
evidence do not necessarily render counsel ineffective.  See id.
at 483.

Ineffective Assistance of
Counsel

          In
his sole issue, Stroble argues that he received ineffective assistance of
counsel during the punishment phase of his trial because his trial counsel
failed to (1) adequately prepare for trial; (2) object to hearsay testimony;
and (3) object to improper argument from the State.

          1.       Failure to investigate

          Stroble
contends that his trial counsel rendered ineffective assistance by failing to
seek an expert witness to evaluate Stroble and testify on his behalf and by
failing to obtain records to support Stroble’s testimony.  Specifically, Stroble asserts that his
defense at punishment was based on the strategy of admitting “to the acts for
which he was prosecuted but his conduct was the result of a combination of
abuse he suffered as a child and adolescent and his addiction to sexual imagery
and conduct.”  Stroble also maintains
that “the trial court did not refuse to consider Stroble’s argument that he
suffered from a mental illness [but noted] an absence of any basis to determine
whether the condition was treatable.” 
Stroble also contends that counsel did not obtain records supporting his
testimony that his prior convictions for indecency with a child were “based on
dating relationships rather than assaults on young girls.”              

          “[C]ounsel
has a duty to make reasonable investigations or to make a reasonable decision
that makes particular investigations unnecessary.”  Randon,
178 S.W.3d at 101–02 (quoting Wiggins v.
Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003)).  When the record is silent concerning
counsel’s decisions after a less than complete investigation, we are unable to
evaluate counsel’s strategy and have an insufficient record on which to
determine whether counsel provided effective assistance.  See id.
at 102.  

          The
record shows that in addition to his own pre-trial work, Stroble’s counsel not
only retained a private investigator who investigated the case, but a
“mitigation expert,” who investigated the case and interviewed Stroble, and a
psychologist, who interviewed and evaluated Stroble.  Counsel and his team apparently investigated
Stroble’s claims; however, the record is silent concerning counsel’s decision,
or the reasoning behind his decision, not to pursue the matter further through
expert testimony.  It is possible that he
could have concluded that any further pursuit of the matter would have been
futile, or possibly harmful to his client’s defense.  Therefore, we cannot say, based on this
record, that counsel was ineffective for failing to pursue the matter
further.  Id.; cf. Rivera v. State,
123 S.W.3d 21, 30–31 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (refusing
to presume counsel’s performance may have been reasonable trial strategy at
punishment phase when counsel failed to perform any investigation of
appellant’s background and record showed that he was unfamiliar with
appellant’s background and criminal history). 
Because Stroble has not met the first prong of Strickland concerning his counsel’s investigation, we do not
address the second prong.  See Rylander,
101 S.W.3d at 110.

          2.       Failure
to object to hearsay

          Stroble
contends that trial counsel rendered ineffective assistance by failing to
object to the hearsay testimony of Lisa Bourgoyne from the Children’s
Assessment Center in Harris County. 
Specifically, Stroble contends that much of Bourgoyne’s testimony
consisted of recounting hearsay statements made by Jane Doe concerning
Stroble’s indecency and sexual assault. 
Stroble asserts that his counsel could have objected to Bourgoyne’s
testimony as hearsay and that the exception for outcry statements did not
apply.

          Assuming that
the trial court would have erred in overruling a hearsay objection to
Bourgoyne’s testimony,[3] we cannot determine
on the record before us that counsel was deficient in not objecting.  As acknowledged in Stroble’s brief, it
appears that trial counsel’s strategy during the punishment phase was for
Stroble to admit he had committed the conduct charged in the indictments and
rely on evidence of his difficult childhood and illness or addiction as
mitigating factors.  By this stage of the trial, he had already pleaded
guilty.  Stroble also took the stand and
admitted to the same conduct that Bourgoyne recounted.  Because the record is silent concerning trial
counsel’s reason for not objecting to Bourgoyne’s testimony, we cannot
speculate to deem his performance deficient. 
See Wood, 260 S.W.3d at 148.  Furthermore, Stroble testified to the assault
and indecency with Jane Doe; when hearsay evidence is improperly admitted, but
the same facts are proved by other admissible evidence, no reversible error
occurs.  Bryant v. State, 282 S.W.3d 156, 163 (Tex. App.—Texarkana 2009,
pet. ref’d) (citing Anderson v. State,
717 S.W.2d 622, 628 (Tex. Crim. App. 1986)).  Because Stroble has not met the first prong
of Strickland concerning the failure
to object to hearsay, we do not address the second prong.  See
Rylander, 101 S.W.3d at 110.




 

          3.       Failure
to object to improper argument

          Stroble
contends that he was provided with ineffective assistance of counsel because
his counsel did not object to portions of the State’s closing argument in which
the prosecutor stated his personal opinion of Stroble’s credibility; referred
to Stroble as “evil” and “despicable”; maintained that “no mitigation evidence
was presented;” and stated that recidivism rates in sex offender programs are
“horrendous,” when no evidence supported that statement.  The following excerpts are most of the
State’s closing argument, with the portions Stroble complains of on appeal
italicized.

. . . .  I believe that the comments that have come
from Mr. Stroble are patently unbelievable. 
I believe that he is nothing more
than an individual who is trying to save his own skin and that you cannot take
anything he says at all as being the truth; and this whole idea that he
would suggest that he is some kind of a sick individual, that he is some kind
of deviant sexual person, I think is unfortunate because we have this idea that
because somebody is sick that they should be availed of certain
treatments.  I’m not saying that Mr.
Stroble is sick at all.  My position, the
State’ position is Mr. Stroble is not sick. 
He is evil and he has
perpetrated the most egregious crimes against children that’s envisioned by the
State; and he’s not done it once, but he has done it many times.  So for him to get up here before this court
and say that, “well I just didn’t know it was wrong until I was 24 years old; I
never received any treatment,” is a patently ridiculous and absurd and I think
insulting thing to represent to this court. 


 

After Stroble’s counsel presented closing argument,
the State responded as follows:

[Bourgoyne] has never seen a sex offender program, now
she’s not an expert obviously, that has been successful; and I think from an
anecdotal point of view we can say the same thing.  We have lots of programs that are treating
sex offenders, but we have never, ever seen any kind of data that says any of
it is successful.  It’s sort of a garden
sort of industry right now.  We say,
we’ve got to do something with these people. 
Let’s put them in a program, let’s give them some treatment; but we’ve
never, ever seen any results from that.  And I think the court is well aware, if you
take judicial notice, that the recidivism rate in these programs is
horrendous.  I’m not going to give you
percentages, but they are great. 
They don’t work.  So if we are to
decide that we are going to put Mr. Stroble in some kind of program, then we
are setting ourselves up for more problems. 
The only way to deal with Mr. Stroble is to put him in the penitentiary
for the rest of his life.  

 

. . . .

 

There is no
mitigating evidence that’s been presented to you, Your Honor.  You know, he shows this little picture here
of the boy’s ranch. There’s never been any suggestion other than Mr.
Credibility, Mr. Stroble, that these things were -- that there was any kind of
sexual abuse, no records, no arrests, no news articles, all we have is the word
of Mr. Stroble, and that’s not very credible.

 

. . . .

 

I have to hand it to [Scott’s daughters], here. . .
.  They have taken their time to come out
here and to testify and to sit through this and to tell some things they’re not
very proud of, and I don’t blame her for that; but she was a kid, and she was
under the influence of a person who is
despicable and who was very, very adept at persuasion.  She should have nothing to be ashamed of
under those circumstances.  She came out
here and she told the story the way it was to benefit this court so you would
have all the information that was available.

 

          Assuming
Stroble’s trial counsel should have objected to these arguments, Stroble must
still meet the second prong of Strickland to receive relief.  As noted above, to prevail on the second
prong of Strickland, an appellant
must show a reasonable probability that the result of the proceeding would have
been different but for counsel’s ineffective assistance, i.e., a probability
“sufficient to undermine confidence in the outcome.”  See
Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; Mitchell, 68 S.W.3d at 642.  “An
appellate court will not reverse a conviction for ineffective assistance of
counsel at the punishment stage unless the appellant shows prejudice as a
result of deficient attorney performance.” 
Rivera, 123 S.W.3d at 32.  “To assess prejudice, ‘we reweigh the
evidence in aggravation against the totality of available mitigating evidence’
as indicated by the record as a whole.”  Id. (quoting Wiggins, 539 U.S. at 534, 123 S. Ct. at 2542).

          The
evidence supporting the trial court’s sentences was overwhelming.  Stroble pleaded guilty to indecency with a
child and aggravated sexual assault of a child. 
The evidence also showed he made a videotape of Scott’s 13-year-old
daughter when she was taking a shower. 
Stroble’s computer had 71 images, including child pornography and
drawings depicting sexual acts with children. 
The images also showed nine-year-old Jane Doe’s genitals and Stroble
engaging in sexual contact with children, including Jane Doe.  Stroble paid Scott’s 15-year-old daughter to
make a recording partially nude.  Later,
while watching the recording, he offered her $150 to masturbate him.  Stroble also admitted to other sexual
assaults including sexual intercourse and oral and anal sex with Jane Doe.  Additionally, Stroble had earlier pleaded
guilty to indecency with a child and received community supervision.  However, he failed to take the opportunity
provided by community supervision and again committed indecency with a child
and was sentenced to prison.  

          Although
the trial court imposed the maximum sentence on the indecency with a child
charge (20 years) and effectively imposed the maximum sentence on the
aggravated sexual assault of a child charge, Stroble has not demonstrated a
reasonable probability—i.e., a probability sufficient to undermine confidence
in the outcome—that the trial court would have imposed a lesser sentence but
for the State’s improper arguments.  See Ex parte Lane, 303 S.W.3d 702, 712
(Tex. Crim. App. 2009) (holding improper argument during guilt-innocence phase
of trial did not result in prejudice to defendant because evidence of
defendant’s guilt was extremely strong). [4]  

          Stroble
argues that “[b]ecause [he] was sentenced to the maximum term of imprisonment
on each charge, there is a reasonable probability the outcome would have been
different [i.e., he would have received a lesser sentence] had counsel’s
performance not been deficient.” 
However, Stroble’s conclusion does not follow from his premise.  As noted above, not only did Stroble plead
guilty to the offenses for which he was charged, he admitted to committing
several other egregious acts.  More
importantly, he had already received a sentence of community supervision for a
prior indecency with a child offense, failed to complete community supervision,
and had it revoked.  The trial court had
evidence before it that Stroble is not likely to be rehabilitated.  Thus, our confidence that the trial court
would not have imposed a lesser sentence is not undermined.  See
Ex parte Lane, 303 S.W.3d at 712.

          We
overrule Stroble’s sole issue.

Conclusion

          We
affirm the judgments of the trial court.

 

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel consists of
Justices Jennings, Higley, and Brown.

 

Do not
publish.   Tex. R. App. P. 47.2(b).

 

 

 

 











[1]           See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i),
(a)(2)(B) (West Supp. 2010).

 





[2]           See Tex. Penal Code Ann. § 21.11(a)(1)
(West Supp. 2010).  





[3]
       See
Ortiz v. State, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002) (“When
an ineffective assistance claim alleges that counsel was deficient in failing
to object to the admission of evidence, the defendant must show, as part of his
claim, that the evidence was inadmissible.”).





[4]
         Prior
cases from the Texas Court of Criminal Appeals applied presumptions in bench
trials that the trial court did not consider improper argument or inadmissible
evidence.  Juarez v. State, 439 S.W.2d 346, 347 (Tex. Crim. App.
1969).  Although it did not mention the
former presumption, the Texas Court of Criminal Appeals expressly overruled the
latter.  Gipson v. State, 844 S.W.2d 738, 740–41 (Tex. Crim. App. 1992).  Specifically, the court stated, “The
promulgation of Rule 81(b)(2) implicitly voided the presumption test, and we
now expressly do so.”  Id. at 741.  Rule 81(b)(2) stated, “If the appellate
record in a criminal case reveals error in the proceedings below, the appellate
court shall reverse the judgment under review, unless the appellate court
determines beyond a reasonable doubt that the error made no contribution to the
conviction or to the punishment.”  Id. at 740.  The current harm rule, Rule 44.2 (“Reversible
Error in Criminal Cases”), is similar to former Rule 81(b)(2) and states, 

 

            (a)
Constitutional Error. If the appellate record in a criminal case reveals
constitutional error that is subject to harmless error review, the court of
appeals must reverse a judgment of conviction or punishment unless the court
determines beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.

 

            (b)
Other Errors. Any other error, defect, irregularity, or variance that does not
affect substantial rights must be disregarded.

 

            Tex. R. App. P. 44.2. 


 

            While the rules no longer treat as
harmless all errors made in a non-jury trial, that does not mean we cannot
consider the fact that the judge was the factfinder.  The trial judge was aware of the difference
between argument based on evidence and argument without any evidentiary
support.  

 

            We also note that the statement that recidivism rates in sex offender
programs are “horrendous” and that the programs “don’t work” was made in a request
that the court take judicial notice of these “facts.”  The trial court did not, however, take
judicial notice.  Additionally, by
requesting that the court take judicial notice, the State implicitly conceded
that this argument was not supported by the evidence.