**Opinion issued December 17, 2020**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-19-00944-CR

_____

**TIMOTHY CORNETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1603103**

---

## MEMORANDUM OPINION

A trial court convicted appellant Timothy Cornett of aggravated assault with

a deadly weapon and sentenced him to eight years in prison. *See* TEX. PENAL CODE

§ 22.02(a)(2). On appeal, Cornett argues that he received ineffective assistance of

counsel when his attorney allegedly failed to file a motion for a sanity evaluation

close in time to the offense and proceeded to trial without obtaining a competency evaluation. He also argues that the trial court erred by failing to conduct an informal inquiry into his competency to stand trial.

Because Cornett's issues are not supported by the appellate record, we affirm.

### Background

Benjamin Trowbridge is a certified optician. He commuted to work by bus, riding an hour and a half each way. One evening, he stopped at a grocery store on his route before returning to a nearby bus stop with snacks and an evening meal.

As Trowbridge approached the bus stop, he saw Cornett crouched behind one end of the bus-stop enclosure putting items in a plastic bag. At trial, Trowbridge described Cornett's eyes as "kind of saucery" and said, "he just looked very bizarre." Trowbridge moved to the other end of the bus stop, put down his backpack, and began to eat his snack. Just then, Trowbridge heard Cornett banging on the enclosure and yelling. Trowbridge told Cornett if he did not stop banging on the bus-stop enclosure, he would call the police. Cornett approached Trowbridge, held a piece of trash to Trowbridge's face, and asked if he wanted it. Trowbridge asked Cornett to walk away.

Cornett then spotted Trowbridge's backpack and moved to pick it up. Inside the backpack were precision optical tools, Trowbridge's dinner, and a baton-type weapon. Trowbridge had purchased the baton two or three months earlier because

2

acquaintances warned him that he was travelling on a dangerous bus route and advised him to carry a weapon for self-defense.

Trowbridge attempted to block Cornett and push him away from the backpack. According to Trowbridge's trial testimony, Cornett then struck and punched him about the head and face several times. They grappled on the ground for less than a minute. When he was able, Trowbridge took the baton from his bag, and he swung it at Cornett. Cornett lunged forward, grabbed the baton, and used it to beat Trowbridge. After three or four minutes, Cornett stopped, and Trowbridge ran to the side of the road to wave down traffic and wait until METRO police arrived.

METRO Police Department Officer Z. Balthazar responded to the assault-in-progress call. He spoke to Cornett, who was already in custody, and to Trowbridge. At trial, Officer Balthazar described Cornett as "very aggressive" and said that Cornett had "maybe a laceration to the front forehead." Officer Balthazar testified that Trowbridge had "major lacerations to his face" and that he had "to be put in a C-brace collar because of possible or potential injury to the neck."

Officer Balthazar testified that Cornett told him, at the scene, that he had been attacked by Trowbridge and acted in self-defense. At the scene, officers found the baton used in the assault. Officer Balthazar testified that a "baton is considered an impact tool" and that it could cause serious bodily injury. He also said that he had seen a baton used on people and that it caused skin lacerations and broken bones.

3

Officer H. Bolanos also responded to the scene. He testified that Cornett was "irate" and loud but not aggressive toward him. Cornett told Officer Bolanos and Officer Balthazar that he was homeless. Officer Bolanos included that information when he wrote the police report. However, the report did not mention Cornett punching Trowbridge or grappling on the ground before the baton was used. Officer Bolanos did not notice any blood on Cornett or his clothing but he recalled seeing a bandage on Cornett's head where he had "a small laceration."

Cornett was arrested and indicted for aggravated assault with a deadly weapon. Defense counsel was appointed, and the same day, counsel requested a competency examination. In the motion for a psychiatric examination to determine whether Cornett was competent to stand trial, defense counsel wrote:

> Defendant does not answer correctly the questions asked by his attorney. Also he claims he has a clear record and he has many priors including an aggravated robbery. He appears to be homeless but said he is living in a number of hotels. He just does not make sense and he is very hostile w/the defense attorney.

The trial court granted the motion for a competency examination.

A case reset form dated October 26, 2018 indicates that the competency exam had not been done and that the reason for the reset until November 9, 2018 was to allow time for a full mental health evaluation. No competency examination report appears in the record. The docket sheet does not clearly indicate whether a competency hearing occurred. The entries for November 9, 2018 state:

4

| 11/9/2018 | Defendant CORNETT, TIMOTHY appeared with counsel PUBCHARA, SILVIA V. |
|-----------|---------------------------------------------------------------------|
| 11/9/2018 | Reset by Agreement of Both Parties, 12/21/2018 09:00AM Arraignment |

Thus, the docket sheet does not state whether the competency hearing occurred on November 9; it merely states that arraignment had been reset to a later date by agreement of the parties. The case was subsequently reset by agreement seven more times before trial.

Cornett waived his right to trial by jury, and the court held a bench trial. Officer Balthazar and Trowbridge were the State's only witnesses. Both identified Cornett in open court. Officer Balthazar testified that Cornett was the person he encountered when he arrived at the scene, and Trowbridge testified that Cornett was "absolutely" the man who beat him with the baton.

Officer Balthazar testified that Cornett told him at the scene that he had been assaulted first, but Officer Balthazar noticed that Trowbridge was more severely injured. Officer Balthazar identified the baton that was recovered in a grassy area near the bus stop. He testified that it was capable of causing serious bodily injury, including lacerations and broken bones. He saw no evidence that Cornett had acted in self-defense.

Trowbridge testified that the assault caused him to bleed heavily. He said that he was taken by ambulance to a hospital where his blood-soaked clothes were

discarded. Trowbridge testified that he had three fractures to his right eye orbital bone, a scratched cornea, a conjunctive hemorrhage of his right eye, a broken nose, a laceration to his face that required stitches, and several large lacerations on top of his head. He was out of work for more than a week, and it took a month for the top of his head to heal.

The defense called Officer H. Bolanos, Jr., who was Officer Balthazar's partner. He testified that Cornett was irate and loud but not aggressive. He also did not recall Trowbridge telling him that the men had fought while on the ground.

Cornett also testified. He said that on the evening of the assault, he had been walking along the sidewalk and, as he approached the bus stop, a man ran across the street toward him. Cornett repeatedly insisted that the man who approached him was not Trowbridge, of whom Cornett said, "I never saw him before in my life, Judge." Cornett testified that Trowbridge had been lying when he identified Cornett. Cornett testified that the man who had run across the street assaulted him by spitting in his face, hitting him with the brim of his baseball cap, grabbing and twisting his groin, and hitting him with the baton. Cornett also testified that the man assaulted him after he fell to the ground. Cornett testified that his left wrist and elbow were injured along with his knee, shin, and forehead. He denied that Trowbridge was the man who assaulted him.

On cross-examination, Cornett denied having any criminal history, but on further questioning, he admitted that he pled guilty to theft in 2011, "accepted" a deadly conduct charge in 2008, and was charged with assault in 2000. As to both the 2000 and 2008 charges, he testified that he had been assaulted by or fighting with another person who was not arrested. And he said he received ineffective representation in connection with the 2011 theft charge. Finally, on further direct examination, Cornett was asked whether he recalled being hospitalized in a psychiatric hospital in 2009 and the diagnosis he received at that time. He recalled going to "that place" for twenty days for an evaluation.

The trial court found Cornett guilty of aggravated assault with a deadly weapon and assessed punishment at eight years in prison. Cornett appealed.

**Analysis**

On appeal, Cornett raises two issues. First, he asserts that he received ineffective assistance of counsel for proceeding to trial without obtaining a competency evaluation report and for not seeking a sanity evaluation early in the case. Second, he asserts that the trial court abused its discretion by not holding an informal inquiry as to his competency based on a suggestion that he was incompetent and the absence of a competency report. Both issues relate to Cornett's competency to stand trial.

## I. Competency to stand trial

"A criminal defendant who is incompetent may not be put to trial without violating due process." *Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013). "The constitutional standard for competency to stand trial asks whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* at 689. Because due process requires that states adopt procedures that adequately assure that incompetent defendants are not put to trial, the constitutional standard for competency to stand trial has been incorporated into the statutory scheme in Texas. *Id.* at 689–90.

"A defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." TEX. CODE CRIM. PRO. art. 46B.003(b). A defendant is not competent to stand trial when he lacks (1) a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. *Id.* art. 46B.003(a). A defendant's competency to stand trial may be raised by either party or on the court's own motion. *Id.* art. 46B.004.

When a suggestion of incompetency has been made, the court must conduct an informal inquiry to determine "whether there is some evidence from any source

that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c). When a court determines that some evidence exists that could support a finding of the defendant's incompetency, it "shall order an examination . . . to determine whether the defendant is incompetent to stand trial in a criminal case." *Id.* art. 46B.005. The Code of Criminal Procedure contemplates that the expert appointed to examine the defendant will provide the court with a report stating his opinion about competency or why he is unable to state such opinion. *Id.* art. 46B.025. The competency trial may be to the bench or to a jury. *Id.* art. 46B.051. "If the court or jury determines that the defendant is competent to stand trial, the court shall continue the trial on the merits." *Id.* art. 46B.053.

Neither mental illness nor a defendant's obstinate refusal to cooperate with counsel alone demands a finding that the defendant is incompetent to stand trial. *Turner*, 422 S.W.3d at 691. But when there is some evidence that the defendant's mental illness fuels his obstinate refusal to consult with his attorney and participate in his defense, the trial court must hold a formal competency trial. *Id.* at 696.

## II.     Ineffective assistance of counsel

The United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure guarantee an accused the right to assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 1.051. As a matter of state and federal law, this right includes the right to reasonably

effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997).

In his first issue, Cornett argues that he did not receive effective assistance of counsel because his attorney proceeded to trial without obtaining a competency report and failed to request a sanity evaluation close in time to his arrest.

## A. Standard of review

To prevail on a claim of ineffective assistance of counsel, the defendant must prove by a preponderance of the evidence that (1) counsel's performance was deficient and (2) a reasonable probability exists that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694. Under the first *Strickland* prong, we presume that trial counsel performed within professional norms. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Under the second *Strickland* prong, a reasonable probability is a "probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A failure to make a showing under either prong defeats a claim for ineffective assistance. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."); *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (failure to prove either *Strickland* prong defeats claim of ineffective assistance of counsel).

Allegations of ineffectiveness must be firmly founded in and affirmatively demonstrated by the record. *Thompson*, 9 S.W.3d at 813. An appellant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance or might reasonably be considered sound trial strategy. *Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

The record on direct appeal in ineffective assistance of counsel cases rarely provides the reviewing court an opportunity to conduct a fair evaluation of the merits. *See Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007); *Randon v. State*, 178 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2005, no pet.). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); *Wood v. State*, 260 S.W.3d 146, 148 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("We will not speculate to find trial counsel ineffective when the record is silent on counsel's reasoning or strategy."). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *See Mata*, 226 S.W.3d at 430.

**B.** **The record is not sufficiently developed for Cornett to establish ineffective assistance of counsel.**

On appeal, Cornett argues that his trial counsel was ineffective because she filed a motion for a competency evaluation but proceeded to trial without first obtaining a competency report or hearing and because she did not request an evaluation of Cornett's sanity at the time of the offense. Appellate counsel argued that she could "think of no strategy" that would justify those actions.

The record indicates that the court granted a motion for a competency evaluation and set the case for a competency hearing. On the designated day, Cornett appeared in court with counsel. The docket sheet indicates only that the case was reset for arraignment. It does not affirmatively indicate whether the court held a competency hearing on that day. No competency examination report appears in the appellate record.

Cornett's trial counsel may have decided not to file a motion for a competency hearing because the court affirmatively set the case for a competency hearing without a request. In addition, the docket sheet entry for the date of Cornett's trial indicates that he "appear[ed] to the Court to be sane."

The record in this case is "nearly bare as to counsel's trial strategy." *See Randon*, 178 S.W.3d at 102 (holding that "nearly bare" record was inadequate to allow the court of appeals to determine counsel's effectiveness). No motion for new trial was filed, and nothing in the record demonstrates why counsel proceeded in the

12

manner that she did. The motion for competency hearing that was filed on the day defense counsel was appointed stated that Cornett "just does not make sense" and that he was "very hostile with the defense attorney." The record indicates that Cornett subsequently appeared in court with trial counsel ten times, but it is otherwise silent as to whether Cornett cooperated with trial counsel or participated in his own defense. Cornett did, however, testify at trial, and his testimony, if believed, would have raised a doubt about the identity of the person who assaulted Trowbridge.

On appeal, Cornett argues that his trial testimony was itself some evidence that he was not sane at the time of the offense. In particular, he focuses on his testimony that: (1) he was assaulted by an unknown man and had never before seen Trowbridge; (2) he had no criminal history because all his prior charges and convictions had been the result of unfair arrests, poor representation, and his consequent acceptance of a plea bargain; and (3) he recalled being in a psychiatric hospital in 2009 for "an evaluation." Appellate counsel calls Cornett's trial testimony "delusional," but the record reflects only that his testimony differed from other evidence adduced at trial and was ultimately rejected by the factfinder. *Cf. Turner*, 422 S.W.3d at 701 (P.J. Keller, dissenting) (appellant "concocted a far-fetched story to attempt to show his innocence. It might not be an exaggeration to say that his position was extremely shortsighted and wrongheaded, but that does not

13

make him incompetent."). Nothing in the record indicates that at the time of the offense, Cornett, "as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE 8.01(a) ("It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong.").

Cornett also asserts that the record shows he was "evaluated as suffering from schizophrenic paranoia in 2009" and "most likely, was suffering from untreated schizophrenia at the time of the incident." The only reference to schizophrenic paranoia in the record is counsel's question to Cornett:

Q.    Did they tell you [that] you suffered from schizophrenia paranoia?

A.    Whatever they said that I suffered from, it was just an evaluation.

Although his counsel asked about "schizophrenia paranoia," Cornett did not confirm that he ever had that diagnosis. No other evidence in the record suggests that Cornett suffered from any mental condition which caused him not to know his assaultive conduct was wrong. *See id.*

Here, counsel's alleged deficiencies are not "so outrageous that no competent attorney" would have acted in that manner. *See Goodspeed*, 187 S.W.3d at 392; *Garcia*, 57 S.W.3d at 440; *Wood*, 260 S.W.3d at 148. Nothing in the record demonstrates why counsel proceeded in the manner that she did, and without counsel's explanation or a finding that counsel's conduct was outrageous, a

14

conclusion that counsel was deficient would be based on nothing more than mere speculation. *See, e.g.*, *Rylander*, 101 S.W.3d at 110–11 (rejecting ineffective assistance of counsel claim where record was silent regarding reasons for counsel's alleged deficiencies). In accordance with binding precedent from the Court of Criminal Appeals and the United States Supreme Court, we overrule Cornett's first issue.

## III. Informal competency inquiry

In his second issue, Cornettt argues that the trial court abused its discretion by failing to hold a sua sponte informal inquiry into his competency to stand trial because the record reflects that there was a suggestion he was incompetent but there was no competency report.

An informal competency inquiry is required when evidence is brought to the court's attention "rais[ing] a bona-fide doubt in the judge's mind about the defendant's competency to stand trial." *Brown v. State*, 129 S.W.3d 762, 765 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *McDaniel v. State*, 98 S.W.3d 704, 710 (Tex. Crim. App. 2003)); *see* TEX. CODE CRIM. PROC. art. 46B.004. "Evidence is usually sufficient to create a bona-fide doubt if it shows recent, severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant." *Brown*, 129 S.W.3d at 765.

In this case, on the day of her appointment to represent Cornett, trial counsel filed a motion for a competency evaluation. The trial court heard and granted the motion. No other evidence in the record indicates that Cornett was incompetent to stand trial, and the trial court's judgment states: "It appeared to the Court that Defendant was mentally competent to stand trial."

Cornett argues, specifically, that his and Trowbridge's testimony demonstrate that he suffered from mental illness and may have been incompetent to stand trial. He asserts that the combination of his trial testimony and the absence of a competency evaluation report required the trial to hold an informal inquiry into his competency.

As we explained in regard to Cornett's ineffective assistance of counsel issue, the undeveloped record does not support this issue. Cornett appeared in court ten times with his counsel. Aside from the motion filed on the day Cornett first met his counsel, nothing in the record indicates that he was unable to cooperate and participate in his own defense. Moreover, mental illness alone is not enough to justify a finding of incompetency to stand trial. *See Turner*, 422 S.W.3d at 691. To raise a question about a defendant's competency to stand trial, there must be some evidence of mental illness that fuels a defendant's refusal or inability to participate in his own defense. *See id.* The record does not show that Cornett was unwilling or unable to participate in his own defense, let alone that any such refusal or inability

was fueled by recent mental illness. *See id.* The undeveloped record in this case does not include evidence that would support a conclusion that a second informal inquiry was required or that the trial court abused its discretion by not holding such a hearing on its own motion. We overrule Cornett's second issue.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Chief Justice Radack and Justices Lloyd and Kelly.

Do not publish. TEX. R. APP. P. 47.2(b).