ACCEPTED
13-14-512-CR
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
2/2/2015 7:13:40 PM
DORIAN RAMIREZ
CLERK

No. 13-14-512-CR

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI AND EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

2/2/2015 7:13:40 PM
DORIAN E. RAMIREZ
Clerk

**CHRISTOPHER MARTINEZ, Appellant**

**vs.**

**STATE OF TEXAS, Appellee**

Appeal from Cause No. 14-CR-1676-F in the 214th Judicial District Court, Nueces County, Texas, the Hon. Jose Longoria presiding

## APPELLANT'S BRIEF

Respectfully submitted by:

Donald B. Edwards
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302
(361) 887-7007
(361) 887-7009 (fax)

**Appellant requests oral argument.  Tex. R. App. P. 39.7**

# List of Parties

**Appellant**

Mr. Christopher Martinez
TDCJ # 1952460
Lopez State Jail
1203 El Cibolo Road
Edinburg, TX 78542

| **Appellant's Trial Counsel** | **Appellant's Appellate Counsel** |
|---|---|
| Ms. Cassandra Bonilla[1] | Mr. Donald B. Edwards |
| Bonilla & Chapa | Law Office of Donald B. Edwards |
| 2727 Morgan St. | P.O. Box 3302 |
| Corpus Christi, TX 78405 | Corpus Christi, TX 78463-3302 |

**Appellee State of Texas Trial and Appellate Counsel**

Ms. Ashley Earl (trial)
Mr. Matthew Manning (trial)
Mr. Doug Norman (appellate)
Asst. Nueces County District Attorneys
901 Leopard St.
Corpus Christi, TX 78401

---

[1] Ms. Bonilla has since taken a position in the Nueces County District Attorney's office and may be contacted at the address shown above for the State's attorneys.

# Table of Contents

List of Parties.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    I.  The evidence was insufficient to support the conviction.. . . . . . . . . . . . 11
    II.  Trial counsel was ineffective for failing to suppress statements taken
        through custodial interrogation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        A.  Standards regarding counsel ineffectiveness claims. . . . . . . . . . 14
        B.  Standards regarding custodial interrogation.. . . . . . . . . . . . . . . . 15
        C.  Mr. Martinez was in custody.. . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        D.  Mr. Martinez was subject to interrogation for purposes of art.
            38.22 and Miranda. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        E.  Counsel was ineffective for failing to move for the suppression of
            the statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Certificate of Compliance and Service. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# Index of Authorities

## Cases

*Barfield v. State*, 63 S.W.3d 446 (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . 12

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . 12

*Ex parte Brown*, 205 S.W.3d 538 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . 15

*Gardner v. State*, 306 S.W.3d 274 (Tex. Crim. App. 2009) . . . . . . . . . . . . . . . . 17

*Herrera v. State*, 241 S.W.3d 520 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . 16, 18

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . 11, 12

*Jackson v. Virginia*, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jones v. State*, 119 S.W.3d 766 (Tex. Crim. App. 2003. . . . . . . . . . . . . . . . . . . 16

*Jones v. State*, 795 S.W.2d 171 (Tex. Crim. App. 1990). . . . . . . . . . . . . . . . . . . 19

*King v. State*, 895 S.W.2d 701 (Tex. Crim. App. 1995). . . . . . . . . . . . . . . . . . . 11

*Lopez v. State*, 343 S.W.3d 137 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . 14

*Martinez v. State*, 313 S.W.3d 358 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). . . . 15

*McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 1449 (1970). . . . . . . . . . . . . . 14

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). . . 16, 17

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . 11

*Munoz v. State*, 853 S.W.2d 558 (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . 13

*Murray v. State*, 864 S.W.2d 111 (Tex. App. — Texarkana 1993, pet. ref'd). . . . 18

*Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932). . . . . . . . . . . . . . . . . . . . 14

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . 12

*Randon v. State*, 178 S.W.3d 95 (Tex. App.-Houston [1st Dist.] 2005, no pet.). . . . . . . 15

*Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . 14

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 2064 (1984). . . . . . . . . . 14, 15

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . 15

*United States v. Abdulla*, 294 F.3d 830 (7th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 19

*Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007).. . . . . . . . . . . . . . . . . . 12

*Wood v. State*, 260 S.W.3d 146 (Tex. App.-Houston [1st Dist.] 2008, no pet.). . . . . . . 15

*Woods v. State*, 152 S.W.3d 105 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . 16

**Statutes**

TEX. CODE CRIM. PROC. ANN. art. 38.22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## Statement of the Case

Christopher Martinez appeals from the judgment of the trial court for 15 months' confinement in the state jail after a jury found him guilty of criminal mischief causing damage in excess of $1,500.00. CR 68. The judgment was announced in open court on August 26, 2014, in *State of Texas vs. Christopher Martinez*, Cause No. 14-CR-1676-F, in the 214th Judicial District Court, Nueces County, Texas, the Honorable Jose Longoria presiding. RR Vol. 5, pp. 9-10.

Mr. Martinez timely appealed on September 3, 2014. CR 66.

## Issues Presented

Whether the evidence was sufficient to support the jury's verdict.

Whether counsel was ineffective for not seeking suppression of statements made by defendant while in custody and not having been read his rights as required by the Texas Code of Criminal Procedure, the Texas Constitution, or the Fifth Amendment of the United States Constitution.

## Statement of Facts

Gabriel Leal was working as a bouncer at the El Dorado club on SPID near Weber in Corpus Christi, Nueces County, Texas, on the night of May 11, 2014. RR Vol. 3, p. 14. He asked two patrons to leave because they had been in verbal altercations with other patrons. RR Vol. 3, p. 14-15. He did not know either man he asked to leave, but he identified the defendant as one of the men. RR Vol. 3, p. 15. One of the men said he had a gun in his car and would return. RR Vol. 3, p. 16. Mr. Leal saw the two patrons to the door, then lost visual contact with them, because he went back in to call police to report the possibility of a confrontation with an armed patron. RR Vol. 3, p. 16.

After two minutes to make the call, Mr. Leal went outside and looked into the parking lot to see if he could locate the two men he ejected. Not seeing them, he began to search the through the parking lot. RR Vol. 3, p. 18. He didn't see them among the cars in the parking lot, so he went to the sidewalk and looked down the street. RR Vol. 3, p. 16. About 100 yards away he saw someone wearing black clothes kneeling at a Hummer making swinging motions. RR Vol. 3, p. 22. That person got into a white Ford Mustang and drove past Mr. Leal who recognized the two people he ordered to leave El Dorado. RR Vol. 3 p. 19.

Juanita Rangel testified she walked Appellant and his brother to the door and saw them drive away without causing any damage to any vehicles. RR Vol. 4, pp. 6-

7. She watched them because she saw a gang of guys out in the parking lot. RR Vol. 4, p. 7. She told Mr. Leal, who was among the group in the parking lot, to just let Appellant and his brother go. RR Vol. 4, p. 9. She knew Appellant didn't return because she got a phone call to join them at Entourage but didn't go since she was at a family gathering at El Dorado. RR Vol. 4, p. 10. There were no police at El Dorado to take her statement that night. RR Vol. 4, p. 12. However, Leal said an officer arrived and took a statement, including a description of the vehicle and the suspects. RR Vol. 3, p. 20.

Officer Casey Henry responded, took Mr. Leal's statement, and sent bulletin out to police to be on the lookout for a white Ford Mustang with license plate beginning TZK or TKZ. RR Vol. 3, pp. 25-26. Police were in the vicinity responding to a different disturbance. Officer Crystal Rodriguez saw a white Ford Mustang pulling out of a parking lot in front of her. RR Vol. 3, ppl 39-40. Her partner, Jerry Lockhart intercepted the Mustang, and six officers confronted the driver and passenger. RR Vol. 3, p. 45; SX 6 JerryL@20140511002520. They ordered Mr. Martinez out of the passenger seat and to put his hands on the top of the car. No one read either suspect any rights. SX6 JerryL@20140511002520 (0:00–6:00).

The officers searched Mr. Martinez and found a knife which he said he used at work at the U&I. He was furthered questioned about what he was doing, whether he had been at the El Dorado, what happened at the El Dorado, why they were leaving

the Entourage, why the left the El Dorado. During this interrogation he was confronted by multiple police officers, handcuffed, and taken to the police vehicle. SX 6, JerryL@20140500002520 (1:00-6:00).

Ten or fifteen minutes after seeing suspects leave in the Ford Mustang, Gabriel Leal identified them as the people he saw near the Hummer and who drove past him. RR Vol. 3, p. 21, l.1; p. 32.

Ruben Barrera testified he owned the vehicle. RR Vol. 3, p. 53. He said he told his tires were slashed on May 11, 2014. He said the vehicle suffered a dent in the window seal that was not there before he entered the El Dorado Club that night. RR Vol. 3, p. 54. However, he did not state the tires were not cut before he went into the club. He said the state's photos accurately represented the condition of the vehicle that night. RR Vol. 3, p. 55. He did not see the tires being cut. RR Vol. 3, p. 58. He did not see defendant in the club, did not have an altercation with him, and never met him before. RR Vol. 3, p. 58. The damage was over $3000 with his insurance deductible being $495. RR Vol. 3, p. 56-57. An insurance adjuster testified the tire repair was $493.44 for each tire. RR Vol. 3, p. 63.

Appellant was indicted for criminal mischief in excess of $1,500.00. CR 5. The jury found him guilty on August 26, 2014. CR 64. Defendant elected for punishment to be determined by the court. CR 45. The trial court assessed punishment at 15 months' confinement to be amended to 13 months if restitution of

$495 was made to the victim within 30 days of the court's order. RR Vol. 5, pp. 9-10.

## Summary of the Argument

The jury could not rationally find all the elements of the offense beyond a reasonable doubt. There was no testimony or evidence regarding the condition of the tires on the vehicle before a witness saw someone next to it. Even assuming the witness identification of the defendant was possible, the witness was a hundred yards away and unable to see if the person had anything in his hand or cut the tires. There was no evidence of any residue on the knife found on Appellant or testimony concerning whether it could have caused the damage to the tires. There was no motive shown from which it could be inferred that Appellant intended to cause damage to the victim's property.

Appellant was interrogated while in custody without being explained his rights to counsel, to refuse to answer questions, to terminate interviews, and without being told any statement would be used against him in court. The entire interrogation was included in the evidence to be given to the jury, and Appellant's statements concerning ownership of the knife found on his person was emphasized by counsel for the State in closing argument. It was below the standard of performance for defense counsel to not move to suppress the statements and object to their use in trial. Such failure was prejudicial to Appellant.

## Argument

### I.  The evidence was insufficient to support the conviction.

When deciding whether evidence is sufficient to support a conviction, a reviewing court must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as charged in the indictment beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  Although the court of appeals is to consider all evidence presented at trial, it may not re-weigh the evidence and substitute its judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, and it is the exclusive province of the jury to reconcile conflicts in the evidence. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).  Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 & n. 11;

*Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In determining the sufficiency of the evidence, a reviewing court examines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. (quoting *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused." *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). However, the jury's decision must be rational and thus cannot be upheld if it relies on evidence of physical impossibilities or speculation.

The sufficiency of the evidence in a bench trial is measured by the evidence adduced at both guilt-innocence and punishment phases. *Barfield v. State*, 63 S.W.3d 446, 451 (Tex. Crim. App. 2001). However, the sufficiency of the evidence in a bifurcated trial in which the jury is asked to determine guilt is to be measured solely by the evidence adduced during the guilt-innocence phase. *Id*. at 450. In such

a case, the appellate court's "consideration of the evidence is necessarily limited to that evidence before the jury at the time it rendered its verdict of guilt." *Id*.; *Munoz v. State*, 853 S.W.2d 558, 560 (Tex. Crim. App. 1993).[2]

The state's case relies on the testimony of a bouncer working at the El Dorado and the testimony of police officers who effected the arrest of Mr. Martinez. No one saw the condition of the Hummer before Mr. Leal saw Appellant next to it. All other witnesses denied seeing the incident at the Hummer. Mr. Leal was 100 yards away from the vehicle at the time. He was thus could not possibly see if the man next to the Hummer had anything in his hand or was cutting tires. All he could testify to was a swinging motion.

A knife was found on Appellant when he was stopped later that night outside a different club. However, there was never any testimony about residue on the knife or whether the knife was capable of causing the damage to the tires.

Finally, there was nothing from which the jury could find a motive for the act that might give rise to an inference that because Appellant intended harm to the victim's property then the circumstances indicate he caused harm to the property. The victim didn't know Appellant and had no confrontation with him in El Dorado.

There being no evidence from which a jury could rationally conclude Appellant

---

[2] As a result, Appellant's declarations during the punishment phase of the trial, including a declaration of accepting responsibility, may not be interpreted to be a confession and used to support the jury's finding of guilt.

damaged any tires on the vehicle, it could not rationally conclude he was guilty of criminal mischief, the judgment should be reversed and an acquittal ordered.

## II. Trial counsel was ineffective for failing to suppress statements taken through custodial interrogation.

### A. Standards regarding counsel ineffectiveness claims

Both the United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in a criminal prosecution. "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 1449 (1970); *Powell v. Alabama*, 287 U.S. 45, 57, 53 S. Ct. 55, 77 (1932)). Effective assistance is not errorless representation but, rather, objectively reasonable representation. *Id*. To prevail on his claim of ineffective assistance of counsel, a defendant must must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id*. (repeating the test set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

Courts of appeals must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Robertson v. State*,

187 S.W.3d 475, 482 (Tex. Crim. App. 2006); *Martinez v. State*, 313 S.W.3d 358, 364 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). To overcome that presumption, a defendant must show that the challenged action could not be considered sound trial strategy under the circumstance. *Martinez*, 313 S.W.3d at 364 (citing *Strickland*, 446 U.S. at 689, 104 S. Ct. at 2065). Allegations of ineffectiveness must be firmly founded in the record, which must demonstrate affirmatively the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). If the record is silent on trial counsel's reasoning or strategy, a reviewing court presume that his action was strategic. *Id*. at 814. The record on direct appeal rarely provides the reviewing court an opportunity to conduct a fair evaluation of the merits of an ineffective assistance of counsel claim. *Randon v. State*, 178 S.W.3d 95, 102 (Tex. App.-Houston [1st Dist.] 2005, no pet.). If the record does not establish that trial counsel's conduct fell below reasonable professional standards, a reviewing court is not to speculate to find trial counsel ineffective. See *Wood v. State*, 260 S.W.3d 146, 148 (Tex. App.-Houston [1st Dist.] 2008, no pet.). In the event the appellate court finds the issue is not shown on the record, the appellant may pursue the claim by way of a habeas petition. *Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006).

    *B. Standards regarding custodial interrogation*

       Long ago, the United States Supreme Court determined that an accused, held

in custody, must be given required warnings before questioning. *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). Law enforcement's failure to comply with the *Miranda* requirements results in forfeiture of the use of any statement obtained during that questioning by the prosecution during its case-in-chief. *Id.* Similarly, the Texas Code of Criminal Procedure provides that a statement is admissible against a defendant in a criminal proceeding if, among other things, the defendant was warned as the statute requires before the statement was made, and the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22, §§ 2(a), 3(a) (West 2005).

### C. Mr. Martinez was in custody

As with the *Miranda* warnings, the article 38.22 warnings are required only for custodial interrogations. *Woods v. State*, 152 S.W.3d 105, 116 (Tex. Crim. App. 2004); TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). "Custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of Miranda. *Herrera*, 241 S.W.3d at 526. "Custody," for purposes of Miranda and article 38.22, includes the following: (1) <u>the suspect is physically deprived of his freedom of action in a significant way</u>; (2) a law enforcement officer tells the suspect he is not free to

leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) probable cause exists to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009) (citing *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996)).

Mr. Martinez was in a vehicle that was intercepted by a patrol car with flashing lights and was immediately confronted by no less than 6 police officers who immediately took him from the vehicle, searched his person, took a knife from him, and kept him guarded and restrained for the entire interrogation. His freedom of movement was considerably restricted, he had every reason to believe he was not free to leave, and he was certainly never told he could leave.

*D. Mr. Martinez was subject to interrogation for purposes of art. 38.22 and Miranda*

Both the Miranda line of cases and article 38.22 of the Texas Code of Criminal Procedure provide that a statement made by the accused during a custodial interrogation is inadmissible unless the accused was properly admonished of certain constitutional rights. *See Miranda*, 384 U.S. at 444; Tex. Code Crim. Proc. art. 38.22, § 2 (listing admonishments that must be given). Custodial interrogation is

"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Miranda*, 384 U.S. at 444; *see also Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (adopting *Miranda* line of cases' definition of custodial interrogation to article 38.22). However, "the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980). In this case, it is undisputed that Garcia was in custody when Detective Smotherman asked his initial questions. Thus, the only issue is whether those questions constituted interrogation within the meaning of *Miranda*.

"Interrogation, as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* (internal quotations omitted). "Interrogation" is defined as any words or actions by the police that they should have known are reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90, 64 L. Ed. 2d 297 (1980). Questioning which occurs as a normal incident of arrest and custody is not interrogation. *Id.* Further, offhand remarks, not designed to elicit a response, do not constitute custodial interrogation. *Id.*, 446 U.S. at 302, 100 S. Ct. at 1690; *Murray v. State*, 864 S.W.2d 111, 114 (Tex. App. — Texarkana 1993, pet.

ref'd). "[T]he Miranda safeguards do not exist to protect suspects from the compulsion inherent in custody alone, nor do they protect suspects from their own propensity to speak, absent some police conduct which knowingly tries to take advantage of the propensity." *Jones v. State*, 795 S.W.2d 171, 176 n.5 (Tex. Crim. App. 1990). Thus, certain types of questions are not considered interrogation, including "routine inquiries, questions incident to booking, broad general questions such as `what happened' upon arrival at the scene of a crime, and questions mandated by public safety. . . ." *Id.* at 174. An objective standard is applied to determine whether custodial questioning constituted interrogation. *See United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002).

As Mr. Martinez was taken from the car, he was asked questions regarding whether they had been to the El Dorado and why they left. SX 6, JerryL@20140511002520, 1:30–6:50. Placing one's self at the scene of a crime is obviously incriminating. Both suspects were told multiple times they were under suspicion of a weapon incident at the El Dorado. Thus, this was interrogation for purposes of Miranda and Tex. Code. Crim. Proc. Art. 38.22.

*E. Counsel was ineffective for failing to move for the suppression of the statements.*

Standard operating procedure for any attorney in a criminal case is to remove

any statement made by the accused that has any tendency to make more probable his guilt. It was below the standard of the profession to fail to move to suppress Appellant's statements that were the product of a custodial interrogation.

Appellant was harmed by this failure due to the State using the Appellant's admission of ownership of the knife in closing argument. RR Vol. 4, p. 26. The statements also included admissions regarding being at the El Dorado, something that would require Appellant to respond with an explanation regarding that presence and departure. The harmful effect of improperly admitted evidence is not cured by the fact that the defendant sought to meet, destroy, or explain it by the introduction of rebutting evidence, and such testimony does not act as a waiver of the right to challenge the admissibility of the evidence originally admitted. *McGlothlin v. State*, 896 S.W.2d 893, 896 n. 9 (Tex. Crim. App. 1995).

There can be no sound trial strategy in allowing incriminatory comments from the accused to be admitted to the jury. In addition to the incriminatory comments, the jury was prejudiced by the intoxicated appearance of Mr. Martinez, his attempts to foist blame on his brother being "the crazy one, and the admission of being involved in altercations at both El Dorado and Entourage. While the record is silent regarding trial counsel's reasoning for permitting the videos to be included in the evidence, there can be no justification of any reasonable trial strategy. Accordingly, the judgment should be reversed and the case remanded for a new trial.

## Prayer

Appellant, Christopher Martinez, respectfully requests this Honorable Court to reverse the judgment of the court below and order an acquittal. Alternatively, he requests this Honorable Court to reverse the judgment and remand for a new trial.

Respectfully submitted,

/s/ *Donald B. Edwards*
Donald B. Edwards
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302
(361) 887-7007
(361) 887-7009 (fax)
Attorney for Appellant

## Certificate of Compliance and Service

I, Donald B. Edwards, certify that this brief contains 3,597 words in those matters not exempted under Rule 9. A copy of this brief is being delivered via copy forwarding service of the electronic filing system to Mr. Doug Norman at his email addresses of douglas.norman@nuecesco.com and douglas.norman@co.nueces.tx.us.

/s/ *Donald B. Edwards*
Donald B. Edwards