ACCEPTED
13-15-00134-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/2/2015 9:47:38 PM
Dorian E. Ramirez
CLERK

No. 13-15-134-CR

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI AND EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

12/2/2015 9:47:38 PM

DORIAN E. RAMIREZ
Clerk

**ELIZABETH VERA, Appellant**

**vs.**

**STATE OF TEXAS, Appellee**

Appeal from Cause No. 13-CR-4233-C in the 94th Judicial District Court, Nueces County, Texas, the Hon. Bobby Galvan presiding

## APPELLANT'S BRIEF

Respectfully submitted by:

Donald B. Edwards
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302
(361) 774-0962
(361) 271-1412 (fax)

**Appellant requests oral argument**

## List of Parties

**Appellant**

Elizabeth Vera
1622 Harriet
Corpus Christi, TX 78416

**Appellant's Trial Counsel**

Ms. Bianca Medina
715 Kinney
Corpus Christi, TX 78401

**Appellant's Appellate Counsel**

Mr. Donald B. Edwards
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302

**Appellee State of Texas Trial and Appellate Counsel**

Ms. Crystal Mathis (trial)
Ms. Abigail Chavez (trial)
Mr. Doug Norman (appellate)
Asst. Nueces County District Attorneys
901 Leopard St.
Corpus Christi, TX 78401

# Table of Contents

List of Parties.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     Underlying facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     Procedural history.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     I.  The trial court committed egregiously harmful error by failing to include
         an instruction regarding the justification of defense of property.. . . 14
         A.  The law on defense of property. . . . . . . . . . . . . . . . . . . . . . . . . . 14
         B.  The right to a defensive instruction. . . . . . . . . . . . . . . . . . . . . . 16
         C.  Such error constitutes egregious error.. . . . . . . . . . . . . . . . . . . . 17
     II.  Trial counsel was ineffective for failing to object to the charge.. . . . . 20
         A.  Standards regarding counsel ineffectiveness claims. . . . . . . . . . 20
         B.  Failure to request defensive instruction is ineffective assistance
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         C.  Harm is shown to undermine confidence in the outcome. . . . . . 23

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Compliance and Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# Index of Authorities

## Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985). . . . . . . . . . . . . . . . . . . . . 18

*Ellison v. State*, 86 S.W.3d 226 (Tex. Crim. App. 2002).. . . . . . . . . . . . . . . . . . . . . 18

*Ex parte Brown*, 205 S.W.3d 538 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . 22

*Ex parte Nailor*, 149 S.W.3d 125 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . 17

*Gambino v. State*, No. 02-14-00356-CR (Tex. App.–Fort Worth) (July 15, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lopez v. State*, 343 S.W.3d 137 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . . . 21

*Martinez v. State*, 313 S.W.3d 358 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd).. . . 21

*McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 1449 (1970). . . . . . . . . . . . . . . 21

*Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Randon v. State*, 178 S.W.3d 95 (Tex. App.-Houston [1st Dist.] 2005, no pet.). . . . . . . 22

*Reynolds v. State*, 371 S.W.3d 511 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . 21

*Sanchez v. State*, 931 S.W.2d 331 (Tex. App.-San Antonio 1996, pet. ref'd). . . . 22

*Saunders v. State*, 817 S.W.2d 688 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . . . 18

*Shaw v. State*, 243 S.W.3d 647 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Storr v. State*, 126 S.W.3d 647 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 2064 (1984). . . . . . . . . . . . . 21

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . . . . 21

*Vasquez v. State*, 830 S.W.2d 948 (Tex. Crim. App. 1992) . . . . . . . . . . . . . . . . . 22

*Wood v. State*, 260 S.W.3d 146 (Tex. App.-Houston [1st Dist.] 2008, no pet.). . . . . . . 22

## Statutes

TEX. PENAL CODE ANN. § 9.01 (3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. PENAL CODE ANN. § 9.04 (West 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TEX. PENAL CODE ANN. § 9.42. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. PENAL CODE ANN. §9.41. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Statement of the Case**

On February 11, 2015, a jury found Elizabeth Vera guilty of aggravated assault. CR 130. After a punishment hearing on the same date, the jury found Ms. Vera had no prior felony convictions and recommended suspending the assessed punishment of 2 years confinement. CR 137. Appellant filed a notice of appeal on March 16, 2015. CR 143. This Honorable Court granted her Motion for Extension of Time to File Notice of Appeal on April 10, 2015.

**Issues Presented**

Whether a person may show justification for using force in defense of her movable property in possession of a person who was driving said property away.

Whether the proper instruction is for use of force instead of use of deadly force when the defendant exhibits a firearm but merely threatens to use it.

Whether it is egregious error for a trial court to fail to instruct a jury on defense of property when such issue has been raised by the evidence and counsel.

Whether trial counsel was ineffective for failing to object to a charge that failed to include a defense of property instruction when the evidence raised the issue for the jury's determination.

## Statement of Facts

*Underlying facts*

Elizabeth Vera was married to Mario Morin, Sr. RR Vol. 4, p. 94, ll. 1-7. They lived together at 1622 Harriet Drive for 13 years before his death. RR Vol. 4, p. 93, ll. 20-25. Mr. Morin left all his property to Ms. Vera by a will probated in Nueces County. RR Vol. 4, p. 100, ll. 5-17. This property included a motorcycle that he bought with cash in 2008. RR Vol. 4, p. 95, ll. 8-10. Elizabeth and her husband would go everywhere on the motorcycle. They rode it so much that she suffered hearing loss. RR Vol. 4, p. 94, ll. 20-23. The motorcycle was "his baby." RR Vol. 4, p. 96, ll. 1-6.

Mario Morin, Jr., has four felony convictions, and was out on parole. RR Vol. 4, p. 62. Before the incident giving rise to the indictment, he took possession of the motorcycle. Mario Morin, Jr., first claimed it was a gift from his father, but he admitted he did not receive title. RR Vol. 4, p. 53, 74. He then claimed he was in the process of purchasing the motorcycle and had made 5 monthly payments of $350 each toward an $8000 price and that his father wasn't giving him title until he paid the bike off. RR Vol. 4, p. 75.

Elizabeth Vera testified she was in possession of the motorcycle until the day of Mario Sr.'s funeral. On that day, she let Mario Jr. ride the motorcycle at the head

7

of the funeral procession. RR Vol. 4, p. 97, l. 16 through p. 98, l. 7. Mario Jr. did not return the motorcycle after the funeral. RR Vol. 4, p. 98, ll. 10-24. Ms. Vera testified Mario Jr. did not receive the motorcycle as a gift or make any payments toward a purchase of it. RR Vol. 4, p. 99, ll. 5-10.

On November 5, 2013, Mario Morin, Jr., went to the house on Harriet and found Jaime Torres there. Mr. Torres was there with his 16 year old son doing some yardwork while his wife and Ms. Vera were out shopping. RR Vol. 4, pp. 82-83. Mario Morin, Jr., cursed at Mr. Torres and demanded he leave. RR Vol. 4, p. 85. Mario Jr., "You got to leave, and that bitch gotta go, too." RR Vol. 4, p. 86. He said, "I'm going to come with my Calaveras home boys... And we're going to fuck her up and whoever is here." RR Vol. 4, p. 88, l. 1-4; p. 89, l. 1-3. This scared Mr. Torres's son. RR Vol. 4, p. 89, ll. 16-17.

Ms. Vera was told about the incident, and it scared her because she knew Mario Jr. was liable to make good on his threat. RR Vol. 4, p. 101. She asked Mr. Torres to make a police report. He did so, and Ms. Vera was listed in the report as "other involved person." RR Vol. 4, p. 125.

On December 13, 2013, Ms. Vera was exiting from the parking lot of an HEB store when she saw Mario Jr. on the motorcycle. RR Vol. 4, p. 102. She followed him until he pulled into a parking lot at Baldwin and Morgan Streets in Corpus

Christi. RR Vol. 4, p. 102-103. She testified that he pointed a gun at her, then hid the gun. RR Vol. 4, p. 103. He testified he did not have a gun. RR Vol. 4, p. 62.

A third party, Jason James Basaldu, witnessed the confrontation in the parking lot. Basaldu testified Ms. Vera pinned the motorcycle against his car with the truck then reversed and approached in the truck and had a firearm. RR Vol. 3, pp. 25-26. Mr. Morin ran behind his vehicle and appeared scared and was not threatening Ms. Vera. RR Vol. 4, p. 28, 32. Ms. Vera appeared hysterical, but she was not threatening to Mr. Basaldu and cooperate with his attempt to defuse the situation. RR Vol. 3, p. 28, 36, 41.

Ms. Vera had called 911 to report she and Mario were both armed, he has a blue warrant, and he stole her motorcycle. DX 1. She then handed the phone to Basaldua to continue the 911 call. Id.

Police were dispatched to the scene. Officer Pennick asked Ms. Vera if she had a gun, and she indicated one in her vehicle. RR Vol. 4, p. 9. Officer Pennick made Ms. Vera get out of her truck, handcuffed her, and put her in the police car. Id. She took possession of a .22 Taurus she found in Ms. Vera's truck. RR Vol. 4, p. 10. She took statements from everyone. She testified Ms. Vera did not mention the fact Mario had a firearm. RR Vol. 4, p. 15. As a result, she did not search Mario for weapons. RR Vol. 4, p. 16.

9

Mario testified that he did not have a gun. RR Vol. 4, p. 62. He froze when Ms. Vera pointed a gun at her. RR Vol. 4, pp. 58-59. He also testified that Ms. Vera rear ended him on the road and that he sped away from her to get distance. RR Vol. 4, p. 56. He got a two or three second lead when he pulled into the parking lot because he saw he was coming up to red lights. RR Vol. 4, p. 56, ll. 5-16. By contrast, Basaldua testified Mario approached very slowly. RR Vol. 4, p. 25, ll. 4-10. There was no mention from the police officers regarding damage to the motorcycle.

*Procedural history*

A grand jury indicted Ms. Vera on February 13, 2014, for aggravated assault by knowingly or intentionally threatening Mario Morin with imminent bodily injury by pointing a firearm at him and using or exhibiting a deadly weapon, a firearm, in the commission of the offense. CR 5.

On February 10, 2015, a jury was chosen, and Appellant elected for the jury to assess punishment. CR 107, 111.

During the trial, defense counsel attempted to elicit testimony from Officer Pennick that the law permits a person to use force to recover property. RR Vol. 4, p. 20, ll. 18-21. Officer Pennick said she didn't think that was allowed but that force can be used to prevent the taking of property. RR Vol. 4, p. 20, ll. 22-23. Defense

counsel asked to approach the witness. RR Vol. 4, p. 20, l. 24-25. The State objected to relevance, and the court held a conference at the bench. RR Vol. 4, p. 21, ll. 1-6. The trial court refused to allow counsel to continue to question the witness about the law of justification, but indicated it thought counsel might be permitted to include language in the charge on the issue. RR Vol. 4, p. 21, ll. 7-15. When defense counsel indicated that would satisfy her, the court stated it was not ruling that such a charge would be permitted, just that it might be. RR Vol. 4, ll, 16-19. The court then refused a request for the witness to read from a treatise explaining the law of justification of defense of property. RR Vol. 4, p. 22, ll. 1-8. However, the court indicated it wanted to think about the issue and would revisit it. RR Vol. 4, p. 22, ll. 12-13.

The court revisited the issue later that morning. It stated it did not think a person was entitled to point a firearm at someone in an attempt to recover property. RR Vol. 4, p. 48, ll. 17-24. Defense counsel said she anticipated the evidence would show she was attempting to recover property and he pointed a weapon at her. RR Vol. 4, p. 49, ll. 1-3. The court stated she would be entitled to a self-defense instruction. RR Vol. 4, p. 49, ll. 4-5. Defense counsel referred to the right to recover property, and the court stated it did not think she would be entitled to an instruction on use of force to recover property. RR Vol. 4, p. 49, ll. 9-13. Defense counsel referred the court to the Texas Penal Code § 9.41(b), and the court said it would take

11

a look at it. RR Vol. 4, p. 49, ll. 16-24.

At the close of evidence, the court asked defense counsel if she was asking for an instruction on self-defense. RR Vol. 4, p. 130, ll. 19-21. Defense counsel said she was. RR Vol. 4, p. 130, ll. 22-23. There was no further discussion about including language regarding defense of property. The charge included a self-defense instruction, but no instruction regarding defense of property. CR 125.

On February 11, 2015, a jury found Elizabeth Vera guilty of aggravated assault. CR 130. After a punishment hearing on the same date during which the State offered no evidence and the defense offered only Ms. Vera's testimony that she had no felony convictions, the jury found Ms. Vera had no prior felony convictions and recommended suspending the assessed punishment of 2 years confinement. CR 137.

## Summary of the Argument

A person is justified in using force in defense of property when she reasonably believes it is necessary to recover the property and is in fresh pursuit of the person who dispossessed her of the property. It is only force and not deadly force to threaten someone with a firearm but not use the firearm.

A defendant is entitled to jury instructions on any issue supported by evidence, even if the evidence is weak or contradicted.

An appellant must show egregious error from unobjected to charge error. Such error is shown when the error goes to the very basis of the case, deprives the accused of a valuable right, or vitally affects her defensive theory. Such harm is shown in this case since the State was permitted by the lack of a jury instruction on defense of property to use that very theory against the Appellant

It is below the standard of professional care to fail to charge a jury with a defensive issue that has been raised by the evidence. Defense counsel recognized the right to use force to recover property but abandoned the issue by the charge conference despite the evidence showing a triable issue regarding whether the use of force was reasonable in attempting to prevent someone from leaving the scene with Defendant's movable property–a motorcycle. There can be no reasonable trial strategy to justify not allowing the jury a chance to find a justification defense after spending the whole trial explaining the circumstances of Defendant's attempt to recover property and protect herself during the process of recovering property. The prejudicial effect of the improper charge was such that confidence in the outcome of the trial is undermined.

**Argument**

**I. The trial court committed egregiously harmful error by failing to include an instruction regarding the justification of defense of property.**

*A. The law on defense of property*

The Penal Code contains two provisions concerning the use of force in the defense of property. One describes the circumstances which can be found to justify the use of force.

> (a) A person in lawful possession of land or tangible, movable property is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.
>
> (b) A person unlawfully dispossessed of land or tangible, movable property by another is justified in using force against the other when and to the degree the actor reasonably believes the force is immediately necessary to reenter the land or recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and:
>
> (1) the actor reasonably believes the other had no claim of right when he dispossessed the actor; or
>
> (2) the other accomplished the dispossession by using force, threat, or fraud against the actor.

TEX. PENAL CODE ANN. §9.41.

The second concerns the use of deadly force.

> A person is justified in using deadly force against another to protect land or tangible, movable property:

14

(1) if he would be justified in using force against the other under Section 9.41; and

(2) when and to the degree he reasonably believes the deadly force is immediately necessary:

(A) to prevent the other's imminent commission of arson, burglary, robbery, aggravated robbery, theft during the nighttime, or criminal mischief during the nighttime; or

(B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and

(3) he reasonably believes that:

(A) the land or property cannot be protected or recovered by any other means; or

(B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury.

TEX. PENAL CODE ANN. § 9.42.

"Deadly force" is defined as force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury. TEX. PENAL CODE ANN. § 9.01 (3). "Force" is not defined in the Penal Code. Its ordinary definition is "power dynamically considered, that is, in motion or in action; constraining power, compulsion, strength directed to an end." Black's Law Dictionary, 5th Ed. (1983). However, the Penal Code specifically

excludes exhibition of a weapon as deadly force.

> The threat of force is justified when the use of force is justified by this chapter. For purposes of this section, a threat to cause death or serious bodily injury by the production of a weapon or otherwise, as long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute the use of deadly force.

TEX. PENAL CODE ANN. § 9.04 (West 2011). Accordingly, the Second Court of Appeals has recently held that exhibiting a firearm without actually using the firearm would allow a defendant a self-defense instruction on the use of force and not require an instruction on the use of deadly force. *Gambino v. State*, No. 02-14-00356-CR (Tex. App.–Fort Worth) (July 15, 2015) (citing *Reynolds v. State*, 371 S.W.3d 511, 514, 522 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd)).

Since Ms. Vera never fired the gun, she cannot be said to have used "deadly force." Accordingly, the issue for this appeal is whether she was entitled to an instruction on the use of force in defense of property. That is, was there some evidence from which a jury could find her to be justified in using force.

### B. *The right to a defensive instruction*

A defendant is entitled to an instruction on any defense supported by the evidence, even if the evidence is weak, contradicted, or lacks credibility. *Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059

(2008). Under the confession-and-avoidance doctrine, however, a defensive instruction is appropriate only when the defendant admits to every element of the offense and interposes the justification to excuse the otherwise criminal conduct. *Id*. at 659; *Ex parte Nailor*, 149 S.W.3d 125, 132-33 (Tex. Crim. App. 2004).

Ms. Vera admitted to following Mario Morin, Jr., and to pulling out a gun to protect herself and loading it. RR Vol. 4, p. 106. This constitutes an admission of the offense. She interposed the excuses of a) being afraid that Mario Morin, Jr., was going to use deadly force on her and causing the confrontation to recover her property. She said pulled the gun and loaded it for her protection. RR Vol. 4, p. 113, ll. 4-10. Despite him having pointed a gun at her, she followed him into the parking lot to recover the motorcycle. RR Vol. 4, p. 127, l, 23 through p. 128, l. 23.

The incident on December 13, 2013, was shown to be the first moment Defendant saw Mr. Morin with the stolen motorcycle, and he was attempting to get away from her with it. As such, this incident qualifies as fresh pursuit after dispossession.

### C. Such error constitutes egregious error.

When, as in this case, an accused fails to object to the charge, "he will obtain a reversal only if the error is so egregious and created such harm that he `has not had

17

a fair and impartial trial' — in short `egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). The error must "`go to the very basis of the case,'" "deprive the accused of a `valuable right,'" or "`vitally affect his defensive theory.'" *Id.* at 172. The degree of harm, sufficiently serious to be called "egregious," is present whenever a reviewing court finds the case for conviction or punishment was actually made clearly and significantly more persuasive by the error. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm is assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

In this case, Defendant spent the bulk of the trial focused on the fact the motorcycle was her property wrongfully taken by Mr. Morin, and Ms. Vera was attempting to recover it. Under the appropriate standard of review, Ms. Vera cannot win a sufficiency challenge to the jury's guilty verdict under the charge given. Mr. Basaldu corroborated Mr. Morin's testimony that she pointed a gun at Mr. Morin. No weapon was found on Mr. Morin, and the testimony of Mr. Basaldu was consistent

that Mr. Morin was posing no threat at the present moment to Ms. Vera. A rational trier of fact could conclude that the State showed beyond a reasonable doubt that Ms. Vera committed the offense and could conclude that it did not have a reasonable doubt that a reasonable person would have felt such force was necessary to protect herself from the use of unlawful force.

However, the issue is not whether the evidence is sufficient to sustain the conviction. The issue is whether there is harm from failing to include an instruction that the jury should find the defendant not guilty if it had a reasonable doubt regarding whether Ms. Vera was in fresh pursuit to recover her property and whether a reasonable person would have felt force was necessary to recover the property. The evidence was such that a rational jury could believe a person in Ms. Vera's position might not have reasonably believed she needed to protect herself from being attacked at that moment but could still believe a person in Ms. Vera's position would have reasonably believed she needed to resort to force to recover her property. However, without an instruction on defense of property, there was nothing in the charge that would permit the jury to find that justification.

In fact, the State could and did use that omission from the charge against Appellant in its closing argument. It argued that Ms. Vera's actions were not taken in self-defense but were only taken to recover the motorcycle. RR Vol. 4, p. 137, ll.

19

1-3. As a result, a theory in support of justification for the offense was mutated into a basis for finding against a separate defensive issue. Had the charge contained the essential instruction regarding defense of property, the State could not have argued that her acting in defense of property proved the offense.

Furthermore, something caused the jury to give Ms. Vera the minimum possible punishment despite it finding against her on the self-defense issue. The jury heard evidence from Mr. Basaldu that Mr. Morin did not pose any threat to Ms. Vera and found her guilty. Nevertheless, it assessed punishment at the minimum of 2 years, imposed no fine, and it recommended suspending imposition of the sentence for a five year period of community supervision. Something resonated with the jury to cause it to impose a minimum sentence.

The failure to instruct the jury on the issue of defense of property was egregious error calling into question the validity of the judgment. The judgment should be reversed and the case remanded for a new trial.

## II. Trial counsel was ineffective for failing to object to the charge.

*A. Standards regarding counsel ineffectiveness claims*

Both the United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in a criminal prosecution. "The right to

20

counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 1449 (1970); *Powell v. Alabama*, 287 U.S. 45, 57, 53 S. Ct. 55, 77 (1932)). Effective assistance is not errorless representation but, rather, objectively reasonable representation. *Id*. To prevail on his claim of ineffective assistance of counsel, a defendant must must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id*. (repeating the test set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

Courts of appeals must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006); *Martinez v. State*, 313 S.W.3d 358, 364 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). To overcome that presumption, a defendant must show that the challenged action could not be considered sound trial strategy under the circumstance. *Martinez*, 313 S.W.3d at 364 (citing *Strickland*, 446 U.S. at 689, 104 S. Ct. at 2065). Allegations of ineffectiveness must be firmly founded in the record, which must demonstrate affirmatively the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). If

the record is silent on trial counsel's reasoning or strategy, a reviewing court presume that his action was strategic. *Id*. at 814. The record on direct appeal rarely provides the reviewing court an opportunity to conduct a fair evaluation of the merits of an ineffective assistance of counsel claim. *Randon v. State*, 178 S.W.3d 95, 102 (Tex. App.-Houston [1st Dist.] 2005, no pet.). If the record does not establish that trial counsel's conduct fell below reasonable professional standards, a reviewing court is not to speculate to find trial counsel ineffective. See *Wood v. State*, 260 S.W.3d 146, 148 (Tex. App.-Houston [1st Dist.] 2008, no pet.). In the event the appellate court finds the issue is not shown on the record, the appellant may pursue the claim by way of a habeas petition. *Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006).

### B. Failure to request defensive instruction is ineffective assistance

Trial counsel's failure to request jury instructions on defensive theories raised by the evidence has been held to constitute ineffective assistance of counsel. *See Storr v. State*, 126 S.W.3d 647 (Tex. App.-Houston [14th Dist.] 2004, pet. ref'd) (voluntary release of kidnap victim); *Vasquez v. State*, 830 S.W.2d 948 (Tex. Crim. App. 1992) (necessity defense); *Sanchez v. State*, 931 S.W.2d 331 (Tex. App.-San Antonio 1996, pet. ref'd); *overruled on other grounds* by *Woods v. State*, 956 S.W.2d 33 (Tex. Crim. App. 1997) (exclusion of evidence obtained illegally).

*C. Harm is shown to undermine confidence in the outcome*

The entire defense of the case was whether Appellant was justified in the use of force as a matter of self-defense and as a matter of defense of property. Yet defense counsel directed the court to the issue of defense of property but failed to request a jury instruction and failed to object to its omission from the charge. In this case, the State even conceded in closing argument that Ms. Vera did what she did because she was trying to get her motorcycle back. RR Vol. 4, p. 153, ll. 1-3. Thus confidence in the outcome of the trial is undermined. As a result, Appellant was convicted by a jury that was given a charge that omitted an essential justification instruction and heard the State explain how that very fact that could have been a justification was no excuse for her behavior.

Appellant was so severely prejudiced by trial counsel's failure to object to the omission of the instruction on defense of property that confidence in the outcome is undermined, and the judgment should be reversed and a new trial ordered.

**Prayer**

Appellant Elizabeth Vera respectfully requests this Honorable Court to reverse the judgment of the court below and remand for a new trial.

Respectfully submitted,

/s/ *Donald B. Edwards*

23

Donald B. Edwards
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302
(361) 774-0962
(361) 271-1412 (fax)
Attorney for Appellant

## Certificate of Compliance and Service

I, Donald B. Edwards, certify that this brief contains 4,187 words in those matters not exempted under Rule 9.  A copy of this brief is being delivered on December 2, 2015, via copy forwarding service of the electronic filing system to Mr. James Rosenkild at his email addresses of james.rosenkild@nuecesco.com.

 /s/ *Donald B. Edwards*
Donald B. Edwards